**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| Kenneth Hueske and Kathleen Hueske, | ) | |
| | ) | |
| Plaintiffs, | ) | **ORDER RE MOTION TO COMPEL** |
| | ) | **AND CONFIDENTIALITY ORDER** |
| vs. | ) | |
| | ) | |
| State Farm Fire and Casualty Company, a | ) | |
| foreign company, | ) | Case No. 1:06-cv-057 |
| | ) | |
| Defendant. | ) | |

---

I.    **BACKGROUND**

Plaintiffs Kenneth and Kathleen Hueske sued Fred Berger and Berger Cattle Company (collectively "Berger") and Circle G Transport, LLC ("Circle G") in state district court for damages allegedly resulting from the supply of contaminated corn syrup.  According to the state court pleadings, plaintiffs contracted with Berger to supply corn syrup as a feed supplement for plaintiffs' cattle.  Berger, in turn, arranged for the corn syrup to be trucked by Circle G.

There is some indication that Circle G was transporting waste fuel oil from the refinery at Mandan, North Dakota to processing facilities making the corn syrup in Minnesota and then  back-hauling corn syrup to North Dakota.  Plaintiffs allege that Circle G had not properly cleaned its tankers between hauls, which resulted in the delivery of contaminated corn syrup to the plaintiffs.  Plaintiffs further allege that Berger was aware that Circle G was not properly cleaning it tankers.  Plaintiffs claim they suffered significant losses to their cattle herd as a result of the consumption of the contaminated corn syrup.

Initially, Berger was defended in the state action by his insurer State Farm Fire and Casualty Company ("State Farm") pursuant to a reservation of rights. State Farm later determined there was no coverage and withdrew its defense. Following State Farm's withdrawal of its defense, Berger entered into a settlement with the plaintiffs in December 2005 of the type approved by the Minnesota Supreme Court in the leading case of <u>Miller v. Shugart</u>, 318 N.W.2d 728 (Minn. 1982), commonly referred to as a "Miller-Shugart" settlement. Pursuant to the settlement, Berger confessed judgment in the amount of $600,000, and plaintiffs agreed to pursue collection only against State Farm.

Later, in May 2006, plaintiffs settled with Circle G for an undisclosed amount pursuant to a confidential settlement, which terminated the state court action. Plaintiffs then filed the present action against State Farm seeking a declaratory judgment that there was coverage for Berger under State Farm's policy and for enforcement of the confession of judgment as to State Farm.

The dispute now before the court is State Farm's motion to compel discovery in which it seeks to require the plaintiffs to disclose the terms of its confidential settlement agreement with Circle G along with certain other information relating to their negotiations with Circle G. Plaintiffs oppose the motion arguing that the settlement was confidential and it is not relevant to the present action. They also interpose an attorney-client objection. Circle G, which is not a party to this action, filed a motion to intervene seeking to be heard only on the discovery issue because it also opposes disclosure of the confidential settlement and the matters leading up to the settlement.

The court held a hearing on February 15, 2007, with respect to both the motions to compel and Circle G's motion to intervene. In a separate order, the court has denied Circle G's motion to intervene as formal party, but granted it leave of court to appear on an amicus basis and to be heard

on the discovery issue.  The briefing by the parties has been completed and the matter is now ripe

for decision.


II.    **DISCUSSION**

In North Dakota, a Miller-Shugart Settlement is enforceable against an insurer if the

agreement is not the result of fraud or collusion and the agreement is reasonable.  <u>TIG Ins. Co. v.

Chapman & Chapman, P.C.</u>, 436 F. Supp. 2d 1047, 1056 (D.N.D. 2006); <u>Sellie v. North Dakota

Guaranty Ass'n</u>, 494 N.W.2d 151, 155 (N.D. 1992).  The reasonableness of the settlement depends,

in part, on the "liability  and damage aspects of plaintiff's claim, as well as the risks of going to

trial." <u>Sellie</u>, 494 N.W.2d at 159 (quoting <u>Miller v. Shugart</u>, 316 N.W.2d at 735).

State Farm argues that the settlement amount, along with the course of negotiations leading

up to the settlement with Circle G, are relevant factors that can be considered in adjudging the

reasonableness of the settlement with Berger.   In support of its position, State Farm cites a

Minnesota decision stating, in part, the following:  "Without knowing what each defendant has

agreed to pay as its share, there is no way of judging the reasonableness or prudence of the

agreement from the standpoint of each defendant."   <u>Useldinger & Sons, Inc. v. Haneleben</u>, 505

N.W.2d 323 (Minn. App. 1997).  <u>Useldinger</u>, however, is not on point because the quoted statement

was made in the context of a settlement with multiple defendants who were acknowledged to be

jointly and severally liable without the settlement breaking down the individual liability of the

defendants, so that the actual settlement amount with the defendant in question was unknown.

The only case the court has been able to find in its limited research that may be closer on

point  is that of <u>Himes v. Safeway Ins. Co.</u>, 66 P.3d 74 (Ariz. Ct. App. 2005).  In <u>Himes</u>, the plaintiff

3

was injured in an automobile collision and sued the driver of the other vehicle, along with General Motors Corporation ("GM") and another defendant. The plaintiff settled with the other driver under a Miller-Shugart type of settlement and proceeded to trial against GM, but then settled with GM during the trial. The plaintiff then sought to enforce the Miller-Shugart settlement against the driver's insurer and the trial court enforced the settlement. The insurer appealed and the Arizona Court of Appeals reversed on the grounds that the trial court had failed to use the correct legal standard in evaluating the reasonableness of the Miller-Shugart settlement.

In addition to challenging the standard used by the trial court in adjudging the reasonableness of the settlement, the insurer in <u>Himes</u> also challenged an evidentiary ruling made during the "reasonableness hearing" regarding the admissibility of the GM settlement. It appears the trial court may have excluded the evidence, but this is not absolutely clear from the opinion. <u>Id.</u> at 84-85. The court of appeals, however, ducked the issue by concluding that the weight and admissibility of the GM settlement evidence should be determined anew by the trial court upon remand in light of the different legal standard for evaluating the settlement. <u>Id.</u> Also, while it is not absolutely clear from the opinion, it appears the defendants in <u>Himes</u> were not jointly and severally liable.

The significance of <u>Himes</u>, for purposes of the present dispute, is that the Arizona Court of Appeals obviously had some doubts about the relevancy of the co-defendant's settlement with GM. Otherwise, presumably, it would have simply ruled on the issue.

Further, <u>Himes</u> aside, plaintiffs have raised legitimate questions regarding the relevancy of the settlement with Circle G in evaluating the reasonableness of the settlement with Berger. First, assuming only tort law applies, Berger remains liable for his separate share of fault undiminished by any settlement amount with Circle G. Hence, the settlement amount does not have to be

4

disclosed for purposes of making an offset.[1]  There also appears to be differences in the character of the acts committed by Berger and Circle G, which raise questions regarding the comparability of the settlements.  Finally, there are reasons why the parties to the Circle G settlement might settle for an amount that does truly reflect the merits of the underlying action in terms of the potential for liability and the magnitude of the possible damages, even assuming the conduct of the defendants is somewhat comparable.  For example, Circle G might overpay a case of weak liability simply to avoid the costs of the litigation.  On the other hand, plaintiffs might settle more cheaply than the merits might otherwise warrant because they may need the money or because they want to be assured of some recovery with the opportunity of obtaining an additional recovery from State Farm as a result of the already concluded settlement with Berger.  And, the fact that a settlement may be the result of considerations other than simply the potential for liability and the scope of damages raises additional questions regarding how far a court should then go in allowing evidence regarding the other factors and whether it is fair to consider the settlement evidence without fully evaluating the other factors.

On the other hand, the recognized potential for abuse in connection with the use of  Miller-Shugart settlements may favor an expansive approach in terms of what may be considered in adjudicating the reasonableness issue.  Also, the very nature of determining reasonableness in this

---

[1]  The undersigned has previously denied a defendant's motion in another case to compel disclosure of a confidential settlement agreement between the plaintiff and a co-defendant  in a tort action when there was no basis for joint and several liability and disclosure of the amount was not required to adjudicate the liability of the moving defendant.  In that case, the moving defendant's curiosity regarding the settlement amount, including its desire to use the information in developing its own settlement strategy, was not a strong enough interest to override the settling parties' interests in keeping the settlement confidential.

setting does not lend itself to precise determinations.[2]  Arguably, in some cases, evidence regarding the amount of a co-defendant settlement may be of assistance in evaluating the reasonableness of a settlement with another defendant, at least on a gross basis and particularly if the settling plaintiff is given the opportunity of explaining any differences in terms of the potentials for liability and whether there were other factors that may have motivated the settlement with the co-defendant. And, if that is true, plaintiff's legitimate concerns regarding consideration of the settlement with Circle G go more to the weight that should be accorded the evidence, rather than its admissibility.

Given the paucity of law regarding what can be considered in adjudging the reasonableness of a Miller-Shugart settlement,  the undersigned believes that, for purposes of discovery, the court should err on the side of caution and allow some of the requested discovery.  Plaintiffs can renew their objections regarding the admissibility the Circle G settlement evidence later when the court is in a better position to make the necessary relevancy determinations based upon a better developed record and a sharpening of the issues.[3]

---

[2]  For example, the courts have indicated a willingness to consider expert testimony regarding the issue of reasonableness.  See Sellie v. North Dakota Guaranty Association, supra (trial court considered testimony from experts regarding the reasonableness  of the settlement); S.G. v. St. Paul Fire & Marine Ins. Co., 460 N.W.2d 639, 644-645 (Minn. Ct. App. 1990) (considered affidavits from several attorneys apparently opining on the subject).  Given the subject matter, such testimony is likely to be fairly speculative.  Also, the North Dakota Supreme Court in Fisher v. Am. Family Mut. Ins. Co.,1998 ND 109, ¶2, 579 N.W.2d 599 held that the trial court can make pro tanto reductions in the amount to be enforced against an insurer to address situations when some of the claims are covered and some are not.

[3]  At the hearing, the court asked the attorneys about the issues in the underlying action.  State Farm took the position that Berger's only potential liability at the time of the settlement was in tort for negligence, that typical North Dakota comparative fault principles applied, and that the state-court defendants were not jointly and severally liable. However, an examination of the amended complaint from the state court action indicates that, in addition to the negligence claims, it also contained claims for breach of express warranty and strict liability in tort, which may have affected the potential scope of  Berger's liability at the time of the settlement in that he may have been exposed to more than merely being severally liable for his own share of fault for part or all of the potential damage.  Cf., Ballard v. Amana Soc., Inc., 526 N.W.2d 558 (Iowa 1995) (strict liability in tort claim could be made for swine losses resulting from consuming contaminated feed); Dakota Grain Co., Inc. v. Ehrmantrout, 502 N.W.2d 234 (N.D.1993) (in a case in which there was no claim of damage to other property, a seller was held 100% liable for direct loss resulting from breach of

Also bearing upon the decision to allow some of the requested discovery is the fact that the plaintiffs and Circle G will not be unduly prejudiced.  In terms of the desire to keep the Circle G settlement confidential, the court can impose an obligation of confidentiality upon State Farm and restrict the use of the discovery information until rulings are made regarding the admissibility of the evidence.  Further, the attorney for State Farm agreed at the hearing to certain limits on its requested discovery, which are addressed next.

In addition to wanting to know the settlement amount of the Circle G settlement, State Farm has also asked for information regarding all settlement offers made in connection with the Circle G settlement.  Upon questioning from the court has to how far discovery should be permitted to go in this area, State Farm's attorney limited his request to any settlement offers made prior to the execution of the Miller-Shugart settlement with Berger and stated that he was not asking that the plaintiff reconstruct the settlement negotiations with Circle G after that point, which included a formal settlement conference conducted by a mediator.   Also, the attorney for State Farm further assured the court that, if Circle G was deposed, he would not be seeking information from it or its employees, agents, or attorney regarding the settlement or why Circle G entered into it.

## III.   ORDER

Accordingly, the motion of State Farm to compel discovery (Doc. #11) is **GRANTED IN PART** and **DENIED IN PART** as follows:

---

warranty, but comparative fault principles, at least  between seller and buyer, were held to apply to consequential damages); see generally 72A C.J.S. Products Liability § 121.  Obviously, if the nature of Berger's potential liability to the plaintiffs was different from Circle G's, this might also have a bearing on the probative value of the Circle G settlement.

1.    Plaintiffs shall within fifteen days produce to the attorneys for State Farm a copy of the confidential settlement agreement between the plaintiffs and Circle G.  The confidential settlement agreement will be treated as "Confidential Material" and subject to the court's further order regarding Confidential Material as set forth below.

2.    Plaintiffs shall within fifteen days provide to State Farm copies of any settlement offers conveyed in writing by either the plaintiffs to Circle G or by Circle G to the plaintiffs, including, in each case, settlement offers made by or to the attorneys for the parties, but limited to the period prior to execution of the Miller-Shugart settlement with Berger.  Also, in response to State Farm's interrogatory no. 2, plaintiffs shall outline any oral settlement offers by either the plaintiffs or Circle G that were made prior to the settlement with Berger.  The documents produced and the written answers regarding the Circle G settlement and settlement offers will be treated as "Confidential Material" and shall be subject to the court's further order regarding Confidential Material as set forth below.

3.    All settlement offers, written and oral, relating to the Berger settlement are discoverable.

4.    The following shall apply with respect to the Confidential Material provided to the attorneys of record for State Farm:

   a.    For purposes of this order, Confidential Material shall include not only the documents designated as Confidential Material by this order, but also the information contained  in the documents.

b.      The Confidential Materials shall be securely maintained, kept confidential, and used solely in connection with the preparation and trial of this action, and for no other purpose.   Following the entry of a non-appealable judgment in this action, all documents that are Confidential Material shall be destroyed and all information that is Confidential Material shall be expunged.

b.      The Confidential Material may be further disclosed by the attorneys for State Farm to any Qualified Persons, but only upon the condition that   the Qualified Persons agree to abide and be bound by the provisions of this order regarding Confidential Material and only upon the further condition that the attorneys for State Farm remain responsible for any breaches of confidentiality and non-compliance by  the Qualified Persons with the provisions of this order.  For purposes of this order, the Qualified Persons are the following:

    i.      State Farm and its employee and agents;.

    ii.      Any person regularly employed by the attorneys of record for State Farm in this action; and

    iii.      Any independent expert or consultant retained by the attorneys for State Farm in connection with this action.

c.      The Confidential Material may be used at depositions and at trial, and may be included with, or the contents thereof disclosed in, any pleading, motion, deposition transcript, or other paper filed with the court in furtherance of this action.  However, in the event that any Confidential Material is included

9

with, or the contents thereof are in any way disclosed by, any pleading, motion, or deposition transcript, such documents, pleadings, transcripts, and other materials shall be kept confidential and under seal until further order of the court and the attorneys filing the information with the court shall be responsible for filing the material as sealed or confidential information.

5.    All requests for costs and attorneys fees are denied.

Dated this 27th day of February, 2007.

/s/ Charles S. Miller, Jr.
Charles S. Miller, Jr.
United States Magistrate Judge